IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| JESSICA GUILFOYLE, | ) | |
| | ) | NO. 4:18-cv-00202 |
| Petitioner | ) | |
| vs. | ) | GOVERNMENT'S RESPONSE |
| | ) | TO DEFENDANT'S MOTION |
| UNITED STATES OF AMERICA, | ) | PURSUANT TO 28 U.S.C. § 2255 |
| | ) | |
| Respondent. | ) | |

COMES NOW the United States of America, through counsel, and moves the Court for an Order denying the defendant's Motion to Vacate, Set Aside, or Correct her sentence filed in the above captioned case (Docket Number 1, hereinafter, Dct 1) as the Petitioner's claims are without merit.   In any case alleging ineffective assistance of counsel, the petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1987), i.e., that counsel's performance was deficient and petitioner was prejudiced as a result. *Id*. at 687.

If the Respondent understands the splattering of complaints now raised by the Petitioner, they seem to be based on an overarching claim that her defense attorney, Chad Primmer, did not spend enough time on her case.   The record before this Court simply does not support such a claim.

According to the Petitioner's own filing, her attorney met with her in person on multiple occasions. (Petitioner's Brief, Page 14 hereinafter, P/B 14).   Even if it were to be determined that 3 or 4 meetings were not enough for a relatively simple case at bar, the Petitioner clearly cannot show any prejudice from the lack of face time with her attorney.

1

The Petitioner's statements in her criminal proceedings highlight this fact.[1]   First, at the time of her entry of a guilty plea, which was taken under oath, (Plea Transcript for case number 1:17-cr-00016, Page 3, hereinafter, PT 3), the Petitioner was asked specifically if she had enough time to review the charges she was facing, the plea agreement she had sign and whether she was satisfied with her attorney.   She advised the Court, under oath, that she was satisfied with the process and her attorney.

> The Court: Have you had an opportunity to discuss [the] charge in detail with your attorney?
>
> The Defendant: Yes.
>
> The Court: And have you also had an opportunity to talk with him about the evidence that he believes the government would present against you if you did go to trial in this matter?
>
> The Defendant: Yes.

 (PT 8).

After discussing with the Petitioner her right to a lawyer, and all the things a lawyer would do for her, the Court asked about the Petitioner's satisfaction with her attorney.

> The Court: And are you fully satisfied with the legal counsel and advice Mr. Primmer has given you in this matter?
>
> The Defendant: Yes, I am.

(PT 9).

The Court also discussed the plea agreement with the Petitioner.

> The Court: Would you turn to page 9 of the plea agreement for me? About two-

---

[1] Chief Magistrate Judge Helen Adams handled the plea proceedings on July 20, 2017 and United States District Court Judge Stephanie Rose conducted the sentencing hearing on November 28, 2017.

thirds of the way down on the page on page 9, at least on my copy, I see your name and above that is a signature.   Is that your signature?

The Defendant: Yes.

The Court: Did you have an opportunity to read this plea agreement before you signed it?

The Defendant: Yes.

The Court: And did have an opportunity to discuss the plea agreement wand any questions that you might have had about the plea agreement with your lawyer before you signed it?

The Defendant: Yes.

The Court:   And was it your voluntary decision to sign the plea agreement?

The Defendant: Yes, it was.

(PT 13-14).

As reflected above, the Petitioner told the Court, under oath, that she had had enough time to review the plea agreement and had asked all her questions answered by her attorney.   In the plea agreement, which is filed at Docket 31, (Dct 31) the Petitioner also declared to the Court that she was satisfied with her legal counsel.   "[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017)(citations omitted).

In addition to the plea colloquy, the Petitioner in writing confirmed her satisfaction with her attorney.   In paragraph 25 of the plea agreement, the Petitioner agreed with the following:

25.   Consultation with Attorney.   Defendant has discussed this case and this plea with the defendant's attorney and states the following is true:

(a) Defendant states that the defendant is satisfied with the representation provided by the defendant's attorney;

(b) Defendant has no complaint about the time and attention defendant's attorney has devoted to this case nor the advice the attorney has given; and,

(c) Although defendant's attorney has given defendant advice on this guilty plea, the decision to plead guilty is defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of the defendant's attorney, and with a full understanding of defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

(Dct 31; ¶ 25).

In addition, the Petitioner acknowledged in the plea agreement that she had enough time with her attorney:

30.   <u>Defendant</u>.  I have read all of this Plea Agreement and have discussed it with my attorney. I fully understand the Plea Agreement and accept and agree to it without reservation.   I do this voluntarily and of my own free will.   No promises have been made to me other than the promises in this Plea Agreement.   I have not been threatened in any way to get me to enter into this Plea Agreement.  I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case.   I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty.   I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

(Dct 31, ¶ 30).

It is clear, that as of July 20, 2017, that the Petitioner was satisfied with her legal counsel and had had enough time to go over the case and any or all of her questions were answered before she entered her guilty plea.

4

On November 28, 2017, a sentencing hearing was held in Council Bluffs, Iowa.   The sentencing court began the proceedings by asking if the Petitioner recalled entered her guilty plea to the charge of possession of a controlled substance, and the Petitioner indicated that she did. (Sentencing Transcript found at Docket 50, Page 2, hereinafter, ST 2).   The sentencing court had the Petitioner's attorney explain how he reviewed the Pre-sentence report with his client:

> The Court: And can you outline the basic process you used to review the report with her?
>
> Mr. Primmer: Essentially I use the same process in every case.  I mail the draft copy to the defendant, give them several days to review it themselves, make any notes on it that they think are appropriate.
>
> Then I visited Ms. Guilfoyle at the jail, filed the objections, and subsequently provided her with a copy of the objections, as well as a copy of the amended final presentence report and the memorandum on sentencing issues.
>
> All of this took place in the Pottawattamie County jail in Council Bluffs, Iowa.

(ST 5).

The sentencing court then ask the Petitioner if she had reviewed the report:

> The Court: … Ms. Guilfoyle, did you have enough time to review your presentence report with Mr. Primmer?
>
> The Defendant: Yes.
>
> The Court: And was he able to answer whatever questions you may have had?
>
> The Defendant: Yes.
>
> The Court: Have you been happy with him as your lawyer?
>
> The Defendant: Yes.

(ST 5-6).

The evidence on the record, provided by the Petitioner herself, clearly shows that she had more than enough time with her attorney, and that she knew the consequences of her plea and what sentence she would receive.   *See Missouri v. Frye*, 566 U.S. 134, 142 (2012)(Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record.   This affords the [government] substantial protection against later claims that the plea was the result of inadequate advice.)   There is simply no evidence that defense counsel was "deficient" in his work or that there was any prejudice to the Petitioner, if he had been.

Other claims by the Petitioner, which also relate to the amount of time and effort defense counsel put forth on her behalf, include failing to investigate.   The Petitioner now claims she did not steal anything from the Walmart and that should have been investigated.   This claim is simply frivolous.   First, whether or not the Petitioner actually took anything from the Wal-Mart is not an issue.   The Petitioner admitted that she was stopped by store security and taken into custody and admitted to a Loss Prevention officer that she had drugs in her purse. (ST 15 & PA ¶ 9).   The drugs that she admitted were in her purse, which she intended to distribute, was and is the only issue.   Nowhere in her filing does the Petitioner claim actual innocence.

Counsel has no duty to raise claims which lack a legal basis and are doomed to fail; accordingly, counsel cannot be deemed to have rendered deficient performance for failing to raise meritless claims. *See e.g. Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("by definition, ... counsel cannot be ineffective for a failure to raise an issue that lacks merit"); *Goff v. Bagley,* 601 F.3d 445, 469 (6th Cir. 2010) (same); *Krist v. Foltz,* 804 F.2d 944, 946-47 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does

not exist.").   The Petitioner now claims that her attorney was defective in his representation

since he did not investigate to "prove that Walmart did not even have a right to search

Guilfoyle." (P/B 16).   Any such investigation would have been futile.   "[T]he Fourth

Amendment is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by

a private individual not acting as an agent of the Government or with the participation or

knowledge of any governmental official.'   Where a private party has revealed to the police

information he has obtained during a private search or exposed the results of his search to plain

view, no Fourth Amendment interest is implicated because the police have done no more than

fail to avert their eyes." *United States v. Jacobsen*, 466 U.S. 109, 130 (1984) (internal citations

omitted).

   The Petitioner believes that her attorney was ineffective for not checking the "purity" of

the methamphetamine she was caught with.   Another totally frivolous argument.   As the Court

is well aware, Chad Primmer is an extremely experienced defense attorney and has dealt with

DCI Criminalistics Laboratory reports on a regular basis.   There was no reason to check the

"authenticity" of the report, particularly when the Petition admitted, under oath, that she

possessed five grams or more of methamphetamine. (PT 15).   In any event, the total amount of

methamphetamine that was located on the Petitioner was 50.66 grams, so to be less than five

grams, the amount of methamphetamine that drove the 120-month sentence, the purity level

would have had to have been less than 10%. (PSR ¶ 11).   Though not impossible, hardly likely,

and certainly not below the *Strickland* standard of deficient assistance by counsel.

   Petitioner's argument that the plea agreement was not a benefit to her is at the very best

speculative.   As part of the agreement, the government agreed to recommend a sentence of 120

months, not a higher sentence based on the calculated guideline range. (ST 3).   As part of her

agreement, the Petitioner's PSR had the weapons enhancement removed so she would have the

benefit to entering the RDAP program she requested. (ST 4).   By these very facts alone, the plea

agreement entered into by the party's benefited the Petitioner.   In addition, since the drafting

and offering of a plea agreement is totally in the government's control, any argument that the

Petitioner's attorney could have negotiated a better deal is without merit.

Petitioner's argument regarding her attorney being deficient for not arguing about the

21 U.S.C. § 851 enhancement is equally without merit.   Clearly, from the Petitioner's

description of the offense the Johnson County, Kansas, Sale or Delivery of Marijuana conviction

was a qualifying offense.   *See* 21 U.S.C. 802 (44).   Whether or not to file the enhancement or to

withdraw the enhancement was clearly in control of the government and not defense counsel.

In any event, the plea agreement that the defendant entered into waived any argument

regarding the applicability of her prior conviction as it related to an enhanced penalty range.

(PSR ¶ 7).

> The Court: …I want to draw your attention to paragraph 7 on page 2.   And
> pursuant to paragraph 7, the government has filed a notice of enhancement
> because you had a prior drug conviction. Are you aware of that?
>
> The Defendant: Yes.
>
> The Court: And you are agreeing and stipulating to that enhancement and not
> asking for a hearing; is that correct?
>
> The Defendant: Yes.

(PT 17).

Based on the sworn statements by the Petitioner at the time of her plea, her statements to

8

the court at the time of her sentencing, her plea agreement, and frankly, common sense, the

petition for relief pursuant to 28 U.S.C. § 2255 should be denied without further hearing.   *See*

*Thomas v. United States*, 27 F.3d 321, 325 (8th Cir.1994) ("[Petitioner's] present attempt to

withdraw his guilty plea reflects only his dissatisfaction and disappointment that he received a

more severe sentence than he anticipated.").

Respectfully submitted,

By:   */s/Richard E. Rothrock*
Richard E. Rothrock
Assistant United States Attorney
8 South 6th St. #348
Council Bluffs, Iowa 51501
Tele:   (712) 256-5009
Email:   Richard.Rothrock@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.   I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

___x___U.S. Mail _____ Fax _____Hand Delivery

_____ECF/Electronic filing   _____Other means

UNITED STATES ATTORNEY
By:   __/s/ms_____
Paralegal

9