1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

JESSICA ANN GUILFOYLE,

    MOVANT.

V.

UNITED STATES OF AMERICA

    RESPONDENT.

CIVIL NO. 1:18-CV-_____
CRIM. NO. 1:17-CR-00016-SMR-HCA-1

MOTION TO AMEND 28 U.S.C. SECTION 2255 TO VACATE, SET-ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES NOW, MOVANT, JESSICA ANN GUILFOYLE, PRO-SE, AND HEREBY REQUESTS AND ASKS PERMISSION OF THIS HONORABLE COURT TO AMEND HER 28 U.S.C. SECTION 2255 TO VACATE, SET-ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.

*/s/ Jessica Ann Guilfoyle*
JESSICA ANN GUILFOYLE 18034030
FCI ALICEVILLE
PO BOX 4000
ALICEVILLE, ALABAMA 35442

RECEIVED

SEP 1 3 2018

CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

JESSICA ANN GUILFOYLE,

    MOVANT,

CIVIL NO. 1:18-CV-_____
CRIM. NO. 1:17-CR-00016-SMR-HCA-1

V.

UNITED STATES OF AMERICA,

    RESPONDENT.

## AMENDED MOTION TO VACATE, SET-ASIDE OR CORRECT SENTENCE UND 28 U.S.C. SECTION 2255

COMES NOW, THE MOVANT, JESSICA ANN GUILFOYLE, PRO-SE DEFENDANT AND FILES THIS AMENDED 28 U.S.C. SECTION 2255 MOTION AND MOVES THIS COURT TO VACATE, SET-ASIDE OR CORRECT THE JUDGMENT AND CONVICTION AND SENTENCE IN THIS CASE. IN SUPPORT THEREOF THE MOVANT SHOWS AS FOLLOWS:

1. The Movant (hereafter "Guilfoyle or movant") was charged Count 1 with Possession with Intent to Distribute 5 Grams or More of Methamphetamine, in violation of 21 U.S.C. Section 841(a)(1) and (b)(1)(B).

2. On March 28, 2017, a grand jury sitting the the United State District Court for the Southern District of Iowa, Western Division, returned a one (1) count Indictment charging Guilfoyle. (See Doc. ). Count 1 charges Guilfoyle with Possession with Intent to distribute 5 Grams or More to Methamphetamine, in violation of 21 U.S.C. Section 841(a)(1) and (b)(1)(B). Id.

3. On May 16, 2017, the government filed an Enhancement Information and Notice of Prior Conviction, pursuant to 21 U.S.C. Section 851 ("851 Enhancement"). See Doc. 21.

4. On July 20, 2017, a Change of Plea Hearing was held and Guilfoyle entered a guilty plea on Count I of the Indictment pursuant to a written Plea Agreement. See Docs. 31,32.

5. On November 28, 2017, Guilfoyle was sentenced to a term of 120 months' imprisonment, 8 years supervised release, no fine or restitution.

6. On or about June 2018, Movant filed a timely 28 U.S.C. 2255 with this honorable court.

7. This Court has given the government until September 18, 2018 to Respond to Movant's 2255 Motion.

8. On this date the Movant is filing a Motion to Amend and a Corrected 2255 with the Amendment incorporating the first 2255 Motion and also the Memorandum of law in support of movant's 2255 Motion.

9. Defendant herein incorporates the previously filed 28 U.S.C. 2255 Motion along with the MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. SECTION 2255 TO VACATE, SET-ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.

The Movant wishes to add as Ground 3: THE DEFENDANT SHOULD HAVE BEEN CHARGED UNDER THE CALCULATION OF A MIXTURE OF METHAMPHETAMINE RATHER THAT ACTUAL METHAMPHETAMINE DUE TO THE FACT THAT BEING SENTENCED UNDER ACTUAL METHAMPHETAMINE MADE HER LOOK MORE CULPABLE.

Movant has not previously brought this argument before any court. Please see attached Exhibit A for the Memorandum in Support of this Argument.

---

WHEREFORE, MOVANT ASKS THIS HONORABLE COURT TO GRANT HER MOTION TO AMEND HER 28 U.S.C. SECTION 2255 AND TO EXCEPT UNDER CONSIDERATION HER ARGUMENT UNDER GROUND 3 NOW ATTACHED.

RESPECTFULLY SUBMITTED,

*[signature]*

JESSICA ANN GUILFOYLE 18034030
FCI ALICEVILLE
PO BOX 4000
ALICEVILLE, ALABAMA 35442

DEFENDANT SHOULD HAVE BEEN CHARGED WITH A MIXTURE OF METHAMPHETAMINE RATHER THAN AN ACTUAL (ICE) METHAMPHETAMINE

The information was regarding Refusal to Follow Actual (and ICE) methamphetamine guideline based on policy disagreement.

Two judges in Northern District of Iowa recently have announced that they disagree with on policy grounds, and no longer will follow, the marijuana equivalency called for in the sentencing guidelines when imposing sentences in cases involving actual methamphetamine and ice.

The Sentencing Guidelines distinguish between a methamphetamine mixture and actual/pure methamphetamine or ice, which it defines as a methamphetamine that is at least 80% pure, treating actual/pure methamphetamine or ice ten times more harshly than a mixture of marijuana. One gram of actual (pure methamphetamine or ice has a marijuana equivalency of 20 kilograms whereas one gram of methamphetamine mixture has an equivalency of 2 kilograms. The ratio has its roots in 21 U.S.C. 841(b)(1). Comment 27(c) to U.S.S.G. Section 2D1.1 offers the only explanation of the Commission's view on the relevance of purity to the appropriate sentence, asserting that purity "is probative of the defendant's role or position in the chain of distribution" and that "since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution. The fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs."

As Chief Judge Leonard T. Strand and District Judge Mark W. Bennett explain in United States v. Harry and United States v. Nawanna, respectively, there is no empirical basis for the 10-1 ratio and, because nearly all methamphetamine trafficked is substantially pure, purity is not an accurate proxy for culpability and it makes little sense to enhance virtually all methamphetamine defendant's sentences on the basis of purity. Both judges indicated that therefore will apply only the 2 kilogram marijuana equivalency even in cases involving actual/pure methamphetamine or ice.

Higher Purity Does Not Equal Higher Culpability

The Guidelines punish "pure" meth, or "methamphetamine (actual)" 10 times more severely than methamphetamine that either has not been tested or is treated as a "mixture" or "substance" containing methamphetamine. This distinction is flawed because it is based solely upon a DEA decision unrelated to the criminal conduct in this case, and it substantially over represents the seriousness of the offense because nearly all the methamphetamine seized in the United States has a purity above 90%.

The Commission justifies treating meth (actual) more harshly than meth (mixture) by presuming that:

The purity of the controlled substance... my be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution... [and] the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.

This assumes that each successive layer of middlemen would dilute ("step-on") meth to increase the quantity for re-sale, resulting in increasingly diluted drugs as the drugs journeyed to the eventual end user. This may or may not have been true at one time, but "there is no support in the legislative history to explain the formula underlying greater methamphetamine purity to greater months of imprisonment. Indeed, the DEA recently reported the methamphetamine per-gram purity levels averaged above 90% meaning that the "average" meth bought by a user on the streets today incorrectly paints him as a presumptive kingpin. Furthermore, as the purity climbed, price plummeted 80% from $293 per gram in 2007 to only $66 per gram in 2015. Accordingly, when the average purity of methamphetamine is more than 90% (and thus, not unusually pure, as characterized by the Guidelines), focusing on meth purity fails to distinguish culpability among drug distributors.

The Sentencing Commission, as early as 1999, identified another problem with purity analysis-selective testing. The Commission reported:

Because the high purity level of street-level methamphetamine and the higher penalties associated with meth-actual, nearly all cases in which an analysis of drug purity is conducted theoretically should be sentenced using the actual quantity of pure drug

contained in the mixture of the substance. It is notable, however that only 36.8 percent of methamphetamine cases (excluding Ice) are sentenced under the meth-actual calculation.

As earlier stated, the average per-gram purity of today's methamphetamine is above 90%. Thus, the presence of the lab report in this case results in an arbitrary re-structuring of the Guidelines relative to other similarly situated defendants.

Notably, along with the Judges above in Northern Iowa, U.S. District Judge Terry Means in the Northern District of Texas, has made it a routine practice to downwardly vary from the sentencing guidelines based on the "meaningless" differentiation to the guidelines create between methamphetamine and methamphetamine actual. See the case of United States v. Flores and United States v. Worley where the same is true.

Movant was at a level 29 then the court allowed a level 27 and a category 5 putting her sentencing guideline range between 120-150 months. This honorable court gave her the minimum mandatory of 120 months. If this court were to evaluate the argument above then the defendant would be a at a lever 14 on the 2D.1.1 chart rather than a 24. This further shows the culpability difference in the numbers themselves. If defendant was originally a 29 on the guideline charts and the defendant was allowed to be sentenced under a mixture of methamphetamine rather than actual methamphetamine which would show her true culpability her sentencing guidelines under a category 5 would be 57-71 months which would appear to be a more realistic sentence given her culpability.

WHEREFORE, Movant requests this court to reduce her sentence to a mixture of methamphetamine to the point she should look less culpable. Movant requests and expedited evidentiary hearing on the issues and a sentence reduction.

18034-030
Jessica Guilfoyle
Aliceville
Federal Correctional Institution
PO Box 4000
Aliceville, AL 35442
United States



BIRMINGHAM AL 35
10 SEP 2018 PM 4

⇔ 18034-030 ⇔
John S Courter
8 S 6TH ST
Clerk of Court Room 313
Council BLFS, IA 51501
United States

**RECEIVED**
SEP 1 3 2018
CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

51501-420688